# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

NEDRICK JEFFREY HARDY, SR.,     )
    )
          Plaintiff,     )
    )
vs.     )        Case No. 17−cv−1354−NJR
    )
BRUCE RAUNER,     )
ILLINOIS DEPARTMENT OF     )
CORRECTIONS,     )
JOHN BALDWIN,     )
KIMBERLY BUTLER, and     )
LASHBROOK,     )
    )
          Defendants.     )

## <u>MEMORANDUM AND ORDER</u>

**ROSENSTENGEL, District Judge:**

Plaintiff Nedrick Jeffrey Hardy, an inmate of the Illinois Department of Corrections ("IDOC") currently housed at Menard Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 seeking injunctive relief and damages for deprivations of his constitutional rights. The case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action are subject to summary dismissal.

### <u>The Complaint</u>

Plaintiff filed this action on December 14, 2017. (Doc. 1). On April 6, 2018, the Court determined that some of Plaintiff's claims were not transactionally related to others and dismissed Counts 12-23 without prejudice as improperly joined. (Doc. 14). This screening order now addresses the remaining Counts 1-11 against Rauner, the IDOC, Baldwin, Butler, and Lashbrook, as well as some motions filed by Plaintiff.

Plaintiff alleges that Menard is overcrowded and that the State of Illinois knows about the problem. (Doc. 1, pp. 5-6). Plaintiff arrived at Menard in 2014. (Doc. 1, p. 7). As a result of the overcrowding, Plaintiff has been housed in double-man cells that were designed to house one inmate. (Doc. 1, p. 19). Plaintiff has been unable to exercise in his cell, and this has caused him arthritis, knee pain, back pain, headaches, and constipation. *Id.* Specifically, Plaintiff was

assigned to the North 1 Upper Cell House, the South Uppers, and the South Lowers during his time at Menard. (Doc. 1, p. 31).

Plaintiff also was inappropriately placed in a cell with an inmate with a history of violence. (Doc. 1, p. 19). Plaintiff's cellmate threatened Plaintiff's life in front of an unnamed officer, and the officer stated that he would take no action. (Doc. 1, pp. 19-20). Plaintiff wrote a grievance and was moved. (Doc. 1, p. 20).

Plaintiff also alleges that he is being denied access to the courts. (Doc. 1, p. 21). Menard only permits inmates to visit the law library once a week. *Id.* Plaintiff's visits with his attorneys are non-contact visits, and when his lawyers have documents for him to inspect, a guard must be present. *Id.* On ten different occasions, Plaintiff has made a privileged phone call with his attorney in a space where he could be overheard by others. (Doc. 1, p. 22). Plaintiff also objects to the use of a "runner system" in the segregation units, in which other inmates carry legal documents to the law library. *Id.* Plaintiff alleges that the system permits inmates to read his privileged legal documents. *Id.* Plaintiff's legal mail has been opened outside of his presence on more than eighty different occasions between 2014 and 2017. *Id.* His legal mail was also held for up to a week. *Id.*

Plaintiff alleges that he only got to exchange his clothes once every calendar year, despite having holes in his underwear. (Doc. 1, p. 23).

Menard serves inmates soy products due to budget cuts, which has caused Plaintiff to experience stomach cramps, constipation, straining, and a hernia. *Id.* Plaintiff alleges that he notified Defendants about these conditions, and they were on notice of the conditions from other lawsuits. (Doc. 1, pp. 23-24).

Plaintiff alleges that the grievance process is insufficient to address problems with staff conduct. (Doc. 1, pp. 24-25). The State of Illinois, the IDOC, Rauner, Baldwin, Butler, and Lashbrook are violating their "carceral burden" in ignoring all of the above issues. (Doc. 1, p. 25).

Menard has no ventilation system, and Plaintiff was subjected to extreme heat temperatures when he was housed in segregation and placed behind a steel door. (Doc. 1, p. 26). At an unspecified time, Plaintiff was not given his fan. *Id.* He alleges that Defendants knew that the segregation cells were dangerous because other inmates have died. *Id.* Plaintiff wrote medical staff and spoke to them face-to-face about his heat sensitivity due to his medications. *Id.* Medical staff told Plaintiff he was not heat sensitive. (Doc. 1, p. 27).

There was also black mold in segregation, and specifically in Plaintiff's cell, for three months. *Id.* Plaintiff developed several sinus infections from the black mold. *Id.* There was also black mold in the showers of multiple cell houses. *Id.* The showers in the South Uppers have a sign on the door warning people not to close the door all the way, suggesting that "they" know there is mold in the shower. (Doc. 1, p. 31). Plaintiff caught an upper respiratory infection from this mold and had to be taken to an outside hospital for an IV and antibiotics. (Doc. 1, p. 27).

Plaintiff was placed in a cell with blood and feces on the wall without adequate cleaning supplies. *Id.* He also fell as a result of being assigned to the top bunk, which lacks a ladder, and he hurt his back. (Doc. 1, p. 28).

Plaintiff further alleges that Menard has "ping-pong" toilets which do not adequately flush and constitute a harm to Plaintiff's health. *Id.*

The water on the exercise yard is turned off in the winter, and Plaintiff is not able to bring a water bottle out with him, causing him to be without water for up to three hours, which is bad for his high blood pressure. *Id.*

Defendants do not give Plaintiff the hour of exercise mandated by the Illinois Administrative Code. *Id.* This causes Plaintiff back pain, headaches, and constipation. *Id.*

The cell house is infested with vermin. *Id.* As a result of the mice, roach, ants, black flies, and gnat infestation, Plaintiff has lost commissary food. *Id.* The vermin has also gotten in his face and property boxes. *Id*. The kitchen is also infested with pests, including roaches, mice, birds, flies, and gnats. (Doc. 1, p. 29).

There are cracks in the walls. *Id.* The water in the sinks and showers frequently smells bad; Plaintiff believes the sewer lines are backing up into the sinks and showers. *Id.* As a result, Plaintiff has itchy skin. *Id.*

The meal trays are falling apart and unsanitary. (Doc. 1, p. 30). Plaintiff choked on a piece of plastic once and showed it to the corrections officer, but he just laughed. *Id.* Likewise, the cups that the inmates use are not properly cleaned; Plaintiff once got diarrhea from drinking out of a cup. *Id.*

In the winter, the heating system does not distribute the air evenly, and cold air blows in through broken windows, cracks in the windows, and doors. *Id.* The maintenance men will not fix these issues. *Id.*

When Plaintiff was housed in the East and West cell houses at Menard, he was discriminated against because the administration did not allow these cell houses to go to night yard, and their commissary purchases were subjected to a dollar amount limit. (Doc. 1, p. 31).

Plaintiff has had to sleep on bedframes on several occasions that were bent, dented, filthy, and/or lumpy causing him back pain, and numbness in his legs and feet. (Doc. 1, p. 32).

When Plaintiff is sent to segregation, he is denied hygiene products. (Doc. 1, p. 32-33).

### Discussion

Previously, the Court designated eleven counts for this action:

**Count 1** – Baldwin, Butler, IDOC, Lashbrook, and Rauner were deliberately indifferent to the overcrowded conditions of confinement at Menard Correctional Center, which caused Plaintiff to be double-celled in a cell designed for one inmate, in violation of the Eighth Amendment;

**Count 2** – Baldwin, Butler, IDOC, Lashbrook, and Rauner were deliberately indifferent to an incident where Plaintiff was celled with a violent inmate due to overcrowding, in violation of the Eighth Amendment;

**Count 3** – Baldwin, Butler, IDOC, Lashbrook, and Rauner subjected Plaintiff to unconstitutional conditions of confinement when he was assigned to cells that lacked ventilation, were smeared with blood and feces, had lumpy and painful mattresses and bed frames, were infested with vermin, had "ping-pong" toilets, lacked ladders, and deprived him of adequate exercise, exposed him to black mold, and used contaminated cups in violation of the Eighth Amendment.

**Count 4** – Baldwin, Butler, IDOC, Lashbrook, and Rauner had a policy of denying inmates adequate access to the courts, in violation of the First Amendment;

**Count 5** – Baldwin, Butler, IDOC, Lashbrook, and Rauner gave Plaintiff an inadequate clothing allowance, in violation of the Eighth Amendment;

**Count 6** – Baldwin, Butler, IDOC, Lashbrook, and Rauner subjected Plaintiff to a soy diet in violation of the Eighth Amendment;

**Count 7** – Baldwin, Butler, Godinez, and Lashbrook had an inadequate grievance process at Menard Correctional Center in violation of the First Amendment;

**Count 8 –**    Baldwin, Butler, IDOC, Lashbrook, and Rauner had a policy that inmates could not bring water onto the yard, placing Plaintiff at risk for dehydration, in violation of the Eighth Amendment;

**Count 9 –**    Baldwin, Butler, IDOC, Lashbrook, and Rauner exposed Plaintiff to poor quality water, in violation of the Eighth Amendment;

**Count 10 –**    Baldwin, Butler, IDOC, Lashbrook, and Rauner exposed Plaintiff to unsanitary and broken meal trays in violation of the Eighth Amendment;

**Count 11 –**    Baldwin, Butler, Godinez, Lashbrook, and Rauner intentionally inflicted emotional distress upon Plaintiff in violation of Illinois state law due to their refusal to act to correct the unconstitutional conditions of confinement at Menard.

As explained below, only Counts 1, 2, and 3 survive initial review. The rest will be dismissed.

First, as an initial matter, the IDOC will be dismissed from this action with prejudice because it is an improper defendant. Plaintiff cannot maintain his suit against the IDOC, because it is a state government agency. The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001) (Eleventh Amendment bars suits against states in federal court for money damages); *Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 788 (7th Cir. 1995) (state Department of Corrections is immune from suit by virtue of Eleventh Amendment); *Hughes v. Joliet Corr. Ctr.*, 931 F.2d 425, 427 (7th Cir. 1991) (same); *Santiago v. Lane*, 894 F.2d 218, 220 n. 3 (7th Cir. 1990) (same). The inclusion of the IDOC in this lawsuit is thus improper, and it will be dismissed from all claims with prejudice.

The Court also must clarify some additional points before moving on to Plaintiff's individual claims. The complaint frequently lapses into generalities where Plaintiff claims Defendants' actions create a risk of harm for the inmates housed at Menard. Plaintiff is only

entitled to assert his own rights in this lawsuit. *Massey v. Helman*, 196 F.3d 727, 739-40 (7th Cir. 1999). The only harms that the Court will consider are the ones that specifically befell Plaintiff. The Court will not consider risks to the inmate population generally.

Moreover, Plaintiff alleges that all of his claims are related to a policy of overcrowding at Menard. This is an implausible allegation. While it may be inferred from some of the factual allegations in the complaint that overcrowding is related to the conditions Plaintiff's complains about, *i.e.*, his claims about two inmates confined to one-man cells, it is difficult to draw the line between overcrowding and Plaintiff's other claims. For example, it is not plausible that overcrowding caused the alleged poor quality water at Menard or caused Defendants not to allow Plaintiff to bring water onto the yard. For this reason, the Court will evaluate Plaintiff's claims based on the factual allegations inherent in each claim and not as part of a larger damages claim based on overcrowding.

**Count 1** alleges that Plaintiff was confined to an overly small cell on multiple occasions. In a case involving conditions of confinement in a prison, two elements are required to establish violations of the Eighth Amendment's cruel and unusual punishments clause. *McNeil v. Lane*, 16 F.3d 123, 124 (7th Cir. 1993). First, an objective element requires a showing that the conditions deny the inmate "the minimal civilized measure of life's necessities," creating an excessive risk to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992). Not all prison conditions trigger Eighth Amendment scrutiny—only deprivations of basic human needs like food, medical care, sanitation, and physical safety. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). Conditions of confinement may be considered in combination with each other when each standing alone would

not violate the Eighth Amendment. *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006) (citing *Wilson v. Seiter*, 501 U.S. 294, 304 (1991)).

Cases have been clear that the inquiry is whether the conditions inflict the unnecessary and wanton infliction of pain grossly disproportionate to the severity of the crime. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). The *Rhodes* Court found that double-celling was not *per se* unconstitutional. *Id.* at 347. Plaintiff has made it clear, however, that he was subjected to double-celling in an exceptionally small cell and deprived of exercise opportunities, which resulted in arthritis, knee pain, back pain, headaches, and constipation. The exercise could act in concert with the small cell size to create an unconstitutional condition of confinement. *See Antonelli v. Sheahan*, 81 F.3d 1422, 1432 (7th Cir. 1996). The Court therefore finds that Plaintiff has adequately pleaded the objective element on his claim that his Eighth Amendment rights were violated when he was confined in cells too small to exercise for extended periods of time.

Plaintiff also has satisfied the subjective component, which requires that the prison official had a sufficiently culpable state of mind. *Wilson*, 501 U.S. at 298; *McNeil*, 16 F.3d at 124. An official must be deliberately indifferent to health or safety; he or she must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and must actually draw the inference. *See, e.g., Farmer*, 511 U.S. at 837; *Wilson*, 501 U.S. at 303; *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Del Raine v. Williford*, 32 F.3d 1024, 1032 (7th Cir. 1994).

Plaintiff has alleged that Defendants were on notice of the conditions at Menard due to other lawsuits, like *Lippert v. Wexford*, No. 10 C 4603 (N.D. Ill.). But the deliberate indifference standard does not use the "notice" standard. It is not enough that Defendants were generally aware of the conditions of confinement at Menard. Rather, Defendants must know that *Plaintiff*

was at risk of serious harm and then consciously disregard that risk. As Plaintiff has not alleged that he participated in *Lippert* or that it addressed incidents that happened to him, *Lippert* is not sufficient to show that Defendants were deliberately indifferent to Plaintiff's serious needs. The inquiry is whether (1) Plaintiff himself was at risk of serious at harm; and (2) Defendants actually inferred that Plaintiff was at risk, but failed to take action to avoid the harm because they were deliberately indifferent. *Petties v. Carter*, 836 F.3d 722, 727 (7th Cir. 2016). Plaintiff has to plausibly allege that each individual defendant was aware that *he* was personally subjected to unconstitutional conditions, not just that there was an increased risk that he might be.

In fact, Plaintiff has alleged that he wrote emergency and regular grievances to the named Defendants regarding his conditions of confinement. (Doc. 1, p. 16). The Seventh Circuit has been clear that failure to properly respond to grievances and letters adequately alleges the subjective element at the pleading stages. *Perez v. Fenoglio*, 792 F.3d 768, 781-82 (7th Cir. 2015). Plaintiff shall therefore be allowed to proceed with **Count 1** against the named Defendants, although the inquiry shall be into whether Defendants were deliberately indifferent to Plaintiff's risk of harm, not whether they were indifferent to the risk of harm to inmates generally.

**Count 2** addresses Plaintiff's claim that he was housed with a known violent inmate due to overcrowding. The Eighth Amendment is violated when a prison official shows deliberate indifference to a risk of serious harm. *Farmer*, 511 U.S. at 828; *Brown v. Budz*, 398 F.3d 904, 915 (7th Cir. 2005). Deliberate indifference is shown where a plaintiff can point to an objectively serious need, which may be a medical need, a lack of life's necessities, or physical injury from another prisoner, and show that an officer knew of the serious need and subjectively disregarded it. *Farmer*, 511 U.S. at 837-38.

Plaintiff has not alleged that he was actually harmed due to the cell placement with an allegedly violent inmate, but the Seventh Circuit has previously held that an inmate could recover for the heightened risk of future injury. *Wright v. Miller*, 561 F. App'x 551, 555 (7th Cir. 2014); *but see Saunders v. Tourville*, 97 F. App'x 648, 649 (7th Cir. 2004) (finding a claim that an officer called an inmate a snitch was properly dismissed because an inmate "who suffers only a risk of physical harm has no compensable claim under the Eighth Amendment") (citing *Babcock v. White*, 102 F.3d 267, 272 (7th Cir. 1996)). Because it appears that there was a period of time where Plaintiff's cell placement put him at a heightened risk of serious harm, **Count 2** will be permitted to proceed.

But Plaintiff has not adequately pleaded that Rauner and Lashbrook were personally involved in his cell placement. The complaint is silent on the relevant dates and times that he was allegedly confined with a violent cellmate, but he has attached a grievance as an exhibit to the complaint suggesting that he was placed in the cell on July 15, 2016. (Doc. 1-8, p. 38). There is no indication that Rauner was aware that Plaintiff was placed in the cell with an allegedly violent inmate; the only correspondence in the record addressed to Rauner is dated January 21, 2016, approximately six months before the cell placement. (Doc. 1-4, p. 27). If Rauner was unaware of Plaintiff's cell placement, he could not have the relevant state of mind. Likewise, Plaintiff's emergency grievance on the subject was reviewed by Kim Butler. (Doc. 1-8, p. 38). Lashbrook succeeded Butler as Warden of Menard. If Butler was still Warden at the time of the relevant events, there is no reason to believe that Lashbrook was personally involved. Defendants Lashbrook and Rauner thus will be dismissed without prejudice from **Count 2**.

**Count 3** likewise states a conditions of confinement claim. The Court considered Plaintiff's allegations in Count 1 and Count 3 individually because the timeline of Plaintiff's cell

placements is ambiguous and thus it is not clear that Plaintiff was double-celled in one man cells during the same time period that he was exposed to the other conditions about which he complains. In fact, it may become clear during the course of this suit that certain conditions did not arise in combination with other conditions, which may require the Court to evaluate them individually later. But it is a plausible reading of the complaint that the conditions arose together, and the Court is required to construe all the inferences in the complaint in Plaintiff's favor at this stage of the proceedings.

Plaintiff has alleged that he has been exposed to conditions of confinement that have exposed him to various health risks like vermin, feces, black mold, and contaminated food trays. He has further alleged that he suffered from respiratory infections and vomiting as a result of the exposure and that he lost commissary items due to the vermin. Plaintiff has further alleged that he was housed in cells that lacked ventilation, making it overly hot in the summer and cold in the winter, exposing him to temperature extremes. He has further alleged that he was given damaged bed frames, which injured his back. As Plaintiff has alleged multiple harms and injuries arising out of his conditions of confinement, he has adequately stated an Eighth Amendment violation in **Count 3**.

A final note about **Count 3** is needed**.** The Court did not include Plaintiff's allegation that he was deprived of night yard as part of his conditions of confinement claim because night yard is a privilege and not a right guaranteed by the Constitution. *See Miller v. Dobier*, 634 F.3d 412, 414-15 (7th Cir. 2011) (loss of privileges is not a liberty deprivation and states no claim). Plaintiff has also characterized this as an act of "discrimination," but he has not alleged that he is a member of a protected class or that those outside of the protected class were treated differently from him. *Doss v. Gilkey*, 649 F.Supp.2d 905, 915 (S.D. Ill. 2009). Plaintiff's claim about night

yard is not cognizable under the Eighth Amendment, and to the extent that Plaintiff is alleging that he was subjected to unconstitutional conditions of confinement on that basis, the claim is dismissed without prejudice.

All of Plaintiff's other claims also must be dismissed at this time. In **Count 4**, Plaintiff alleges that he has been deprived of access to the courts based on Defendants' various objectionable policies. But Plaintiff has not made enough allegations to sustain his claim. The Seventh Circuit uses a two-part test to decide if prison administrators have violated the right of access to the courts. *Lehn v. Holmes*, 364 F.3d 862, 868 (7th Cir. 2004). First, the prisoner must show that prison officials interfered with his legal materials. *Devbrow v. Gallegos*, 735 F.3d 584, 587 (7th Cir. 2013) (citing *Lewis v. Casey*, 518 U.S. 343, 348 (1996)). Second, he must be able to show "some quantum of detriment caused by the challenged conduct of state officials resulting in the interruption and/or delay of plaintiff's pending or contemplated litigation." *Alston v. DeBruyn*, 13 F.3d 1036, 1041 (7th Cir. 1994); *see also Lehn*, 364 F. 3d at 868. That means that a detriment must exist, a detriment resulting from illegal conduct that affects litigation. To state a claim, a plaintiff must explain "the connection between the alleged denial of access to legal materials and an inability to pursue a legitimate challenge to a conviction, sentence, or prison conditions," *Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir. 2009) (internal quotation and citation omitted); *accord Guajardo-Palma v. Martinson*, 622 F.3d 801, 805-06 (7th Cir. 2010). This requires Plaintiff to identify the underlying claim that was lost. *See Christopher v. Harbury*, 536 U.S. 403, 416 (2002); *Steidl v. Fermon*, 494 F.3d 623, 633 (7th Cir. 2007).

Plaintiff has articulated a litany of grievances against the way his legal matters are handled at Menard, but he has not actually alleged that any meritorious claim was lost as a result of Defendants' conduct or policies. As a result, **Count 4** will be dismissed without prejudice.

In **Count 5**, Plaintiff alleges he only received new clothes and towels once a year due to budget cuts and overcrowding. As a result, Plaintiff was forced to go around with holes in his underwear. Like Plaintiff's other claims, this count also arises under the Eighth Amendment. "A prison official's act or omission [that] result[s] in the denial of the minimal civilized measure of life's necessities" violates the Eighth Amendment. *Farmer*, 511 U.S. at 834; *Myers v. Indiana Dep't of Corr.*, 655 F. App'x 500, 503–04 (7th Cir. 2016), *reh'g denied* (July 28, 2016). Those necessities include clothing, sanitation, and hygienic materials. *See id.* at 832; *Townsend v. Cooper*, 759 F.3d 678, 687 (7th Cir. 2014); *Townsend v. Fuchs*, 522 F.3d 765, 774 (7th Cir. 2008); *Gillis v. Litscher*, 468 F.3d 488, 493–94 (7th Cir. 2006). A prisoner may state a claim based on the condition of his clothing if the clothing is inadequate to deal with the conditions to which he is exposed, like extreme weather. *Mays v. Springborn*, 575 F.3d 643, 648 (7th Cir. 2009).

Plaintiff has not alleged that he was harmed by the failure to replace his clothing more frequently than once a year. *Myers*, 655 F. App'x at 504 ("[Plaintiff] may be upset that his [clothing] items were discolored and 'smell[ed] like sweaty gym clothes.' Deficiencies in whiteness and freshness alone, however, do not fall short of the minimal necessities that the Eighth Amendment requires for basic dignity."). Plaintiff has not alleged that he lacked clothes entirely; his claim appears to be premised on the quality of his clothes due to the infrequency of clothing exchanges. And like the plaintiff in *Myers*, Plaintiff has also failed to allege that he suffered any harm from the conditions of his clothes, or that he was at risk of any harm. A few holes in the crotch of some underwear is not the kind of harm recognized by the Eighth Amendment. Accordingly, **Count 5** will be dismissed without prejudice.

In **Count 6**, Plaintiff alleges that he has been served soy products in violation of the

Eighth Amendment. A number of courts have rejected inmates' claims that a soy diet puts them at risk of serious harm. In *Harris v. Brown*, the court appointed both attorneys and experts for the plaintiffs, but ultimately concluded after reviewing the expert reports and noting the ubiquity of soy in the American diet that "society today simply does not see soy protein as a risk to the general population, much less a serious risk." No. 07-CV-3225, 2014 WL 4948229 at *4 (C.D. Ill. Sept. 30, 2014). The court granted summary judgment to the defendants, noting that even if it accepted the plaintiffs' expert opinions, they did not conclusively establish that soy protein created a risk, only that "the safety of soy is a topic of current debate and study." *Id.* Other courts have also come to the same conclusion, albeit on a less developed record. *See Riley-El v. Godinez*, No. 13 C 8656, 2015 WL 4572322 at *4 (N.D. Ill. July 27, 2015) ("[T]he alleged risks posed by consuming a soy-rich diet to not rise to the level of an Eighth Amendment violation."); *Munson v. Gaetz*, 957 F.Supp.2d 951, 954 (S.D. Ill. 2013) (finding that defendants were entitled to qualified immunity because no court has found soy to be harmful); *Smith v. Rector*, No. 13-cv-837, 2013 WL 5436371 (S.D. Ill. Sept. 30, 2013) (dismissing claim on vague allegations that prison meals contained too much soy); *Adams v. Talbor*, No. 13-2221-JES-JAG, 2013 WL 5940630 (C.D. Ill. Nov. 6, 2013) (dismissing prisoner's claim that a soy based diet caused him to experience stomach problems).

To the extent that Plaintiff is attempting to allege that a soy diet is an unconstitutional condition of confinement, the claim fails. The alleged risks of a soy diet do not rise to the level of a serious harm under the Eighth Amendment.

Alternatively, the Court finds that Defendants are entitled to qualified immunity on the alleged general health risks of consuming soy. Qualified immunity shields government officials from liability where "their conduct does not violate 'clearly established statutory or

constitutional rights of which a reasonable person would have known.'" *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Courts use a two part test to determine whether a defendant is entitled to qualified immunity: (1) whether the conduct complained of violates the Constitution; and (2) whether the right was clearly established at the time the conduct occurred. *Id.* at 743 (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Either element of the test may be reached first. *Pearson*, 555 U.S. at 236.

Although qualified immunity is an affirmative defense, the burden of meeting the two part test rests on the plaintiff. *Eversole v. Steele*, 59 F.3d 710, 717 (7th Cir. 1995). The Supreme Court has emphasized the importance of resolving qualified immunity questions at the earliest stage possible of litigation. *Saucier v. Katz*, 533 U.S. 194, 202 (2001). The Seventh Circuit has also upheld dismissals on qualified immunity grounds in soy diet cases on a motion brought pursuant to Federal Rule of Civil Procedure 12(b)(6), which shares its standard with § 1915A. *See Doe v. Village of Arlington Heights*, 782 F.3d 911, 916 (7th Cir. 2015). The Court will dismiss on qualified immunity grounds where the facts of the complaint, taken as true, fail to allege the violation of a clearly established right.

Here, the Court has not found a single case that concludes that soy-based diets pose a serious risk to prisoner health generally. It has not found a case that holds that soy is nutritionally inadequate or that it violates the Constitution. In fact, the Seventh Circuit specifically declined to hold that a soy-based diet violates the Constitution in at least one case. *Johnson v. Randle*, 619 F. App'x 552, 554 (7th Cir. 2015). The Court therefore finds that because no court has found a soy-based diet unconstitutional, the right is not clearly established, and Defendants are entitled to qualified immunity. **Count 6** will be dismissed with prejudice.

Plaintiff puts the grievance process itself at issue in **Count 7**, but his allegations fail to state a claim. "A state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause." *Antonelli*, 81 F.3d at 1430. The Constitution requires no procedure at all, and the failure of state prison officials to follow their own procedures does not, of itself, violate the Constitution. *Maust v. Headley,* 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091, 1100-01 (7th Cir. 1982). Accordingly, **Count 7** will be dismissed with prejudice.

In **Count 8**, Plaintiff has alleged that the water is turned off to the outside yard at Menard during the colder winter months. He has further alleged that he is not permitted to bring his own water out on the yard at these times, putting him at risk of dehydration. But Plaintiff has not alleged that he actually suffered from dehydration or any other harm as a result of not being allowed to bring a water bottle out on the yard. Section 1983 is a tort statute, so plaintiff must have suffered a harm to have a cognizable claim. *Bridges v. Gilbert*, 557 F.3d 541, 555 (7th Cir. 2009); *Doe v. Welborn,* 110 F.3d 520, 523 (7th Cir. 1997). The Court is also not prepared to say that yard time without access to running water creates a risk of harm so grave so as to violate the Eighth Amendment. **Count 8** will be dismissed without prejudice for failure to state a claim.

Plaintiff alleges in **Count 9** that he was exposed to poor quality water. Unfortunately, however, this claim suffers from the same problems as Count 8. Plaintiff has alleged that the water "smells" and makes his skin itch. But Plaintiff has not described the itching in such a way that the Court could conclude from his allegations that the itching amounts to a serious problem. For example, he has not alleged that he sought medical attention for his skin condition. Plaintiff's claim that the itchiness is caused by feces in the water is also entirely speculative. For

these reasons, Plaintiff's claims regarding water quality will be dismissed without prejudice for failure to state a claim.

Plaintiff also inadequately pleaded **Count 10**. Plaintiff alleges that he choked on a piece of plastic from the trays because the trays are breaking down in the chow hall. But Plaintiff has not alleged that he suffered any harm as a result of the choking incident. In fact, he has alleged that he was able to remove the obstruction himself to show it to a guard. Plaintiff has not alleged that he sought medical attention or had a physical injury. Moreover, Plaintiff has not alleged that any of the named Defendants had a culpable state of mind, that is, that they knew the condition of the trays was such to pose a serious risk of harm to Plaintiff. On these facts, **Count 10** will be dismissed without prejudice.

Plaintiff's last claim arises under state law. **Count 11** alleges that Defendants intentionally inflicted emotional distress ("IIED") upon Plaintiff. Under Illinois law, a plaintiff claiming intentional infliction of emotional distress must demonstrate that the defendant intentionally or recklessly engaged in "extreme and outrageous conduct" that resulted in severe emotional distress. *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1030 (7th Cir. 2006); *see Lopez v. City of Chi.*, 464 F.3d 711, 720 (7th Cir. 2006). The tort has three components: (1) the conduct involved must be truly extreme and outrageous; (2) the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress; and (3) the conduct must in fact cause severe emotional distress. *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988). To be actionable, the defendant's conduct "must go beyond all bounds of decency and be considered intolerable in a civilized community." *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001) (citing *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 211 (Ill. 1992); *Campbell v. A.C. Equip. Servs. Corp., Inc.*,

610 N.E. 2d 745, 749 (Ill. App. 1993)). Whether conduct is extreme and outrageous is judged by an objective standard, based on the facts of the particular case. *Honaker*, 256 F.3d at 490.

Plaintiff has not adequately pleaded an IIED claim. First, it is debatable whether the conduct Plaintiff complains of truly rises to the level of extreme and outrageous, which is a high bar. *See Lopez v. City of Chicago*, 464 F.3d 711, 720-21 (7th Cir. 2006) (detainee had viable IIED claim where he alleged that he was chained to a wall for 4 days and only received food and drink once during that time period); *Honaker v. Smith*, 256 F.3d 477, 492-93 (7th Cir. 2001) (setting a fire to burn someone's house down would constitute "extreme and outrageous" conduct); *Williams v. Erickson*, 962 F.Supp.2d 1038, 1043 (N.D. Ill. 2013) (inmate stated viable IIED claim where he alleged that nurse failed to assist him in changing his colostomy bag, causing him to lay in his own feces for four hours).

But even assuming that it does, Plaintiff has not adequately alleged that Defendants had the requisite mental state to inflict serious harm upon him personally. In fact, Plaintiff has used the deliberate indifference standard in pleading his IIED claim, that is, he has alleged that Defendants were aware of a specific risk of harm to inmates generally, through other lawsuits and court findings, and took no action to avert those risks. In contrast to Section 1983, nothing permits Plaintiff to bring an IIED claim based on an impermissible policy or custom. Defendants must have intended to inflict *Plaintiff* with severe emotional distress, and Plaintiff's argument that they knew that their conduct recklessly risked doing so based on lawsuits filed by other prisoners does not establish the requisite intent. Therefore, Plaintiff's IIED claim will also be dismissed without prejudice.

**<u>Pending Motions</u>**

Plaintiff has filed a Motion for Status. As this order will serve as a status of the case, this motion (Doc. 13) is moot.

Plaintiff also filed a motion seeking to reconsider the Court's prior dismissal of Counts 21 and 23 of this action as being transactionally unrelated to the remaining claims. (Doc. 15). As an initial matter, Plaintiff's Motion repeatedly states that the Court found that Counts 1-11 had merit in its previous order. This is incorrect; the Court did not weigh the merits of any claim in its previous order. Instead, it considered whether Plaintiff's many claims were properly joined pursuant to the Federal Rules of Civil Procedure, and dismissed certain claims as improperly joined. The Court *did not* state that Plaintiff would be allowed to proceed on Counts 1-11 or order service; it merely found those claims transactionally related.

Nevertheless, Plaintiff argues that the Court was wrong to dismiss Counts 21 and 23. Federal Rule of Civil Procedure 54(b) states:

> any order . . . which adjudicates fewer than all of the claims . . . shall not terminate the action as to any of the claims . . . and the order . . . is subject to revision at any time before the entry of judgment. . . .

Under this rule, a court may reconsider its own orders that dispose of less than the entire case prior to final judgment. *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp*, 460 U.S. 1 (1983). The Court may, *sua sponte* or on motion, correct clear errors of fact or law in an interlocutory order. *Diaz v. Indian Head Inc.*, 686 F.2d 558, 562-63 (7th Cir. 1982). The purpose of a motion to reconsider is to correct manifest errors of law or fact or to present newly discovered evidence. *Caisse Nationale de Credit Agricole v. CBI Indus. Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996). Reconsideration is also appropriate where "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made

an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.,* 906 F.2d 1185, 1191 (7th Cir. 1990) (citing *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.,* 99 F.R.D. 99, 101 (E.D. Va. 1983)). "A manifest error is not demonstrated by the disappointment of the losing party, instead it is the wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metropolitan Life Ins. Co*., 224 F.3d 601, 606 (7th Cir. 2000).

Count 21 raised an IIED claim against Asselmeier, Doe #1, Doe #2, Hinton, Newbold, Rauner, Siddiqi, Trost, and Wexford based on all of the alleged deficiencies that Plaintiff has experienced in his medical care from 2015 to the present. Count 23 raised a claim against IDOC and Wexford for refusing to develop policies to accommodate Plaintiff's alleged disability. Plaintiff alleges that these claims were properly joined to this action because he believes that the deficiencies in his medical care are related to overcrowding in Illinois prisons. As explained above, it is not plausible that overcrowding caused all of the problems that Plaintiff complains about. But more to the point, the factual basis of the claims remains distinct from Plaintiff's other claims.

Plaintiff argues in his motion that he suffered physical harm as a result of the unconstitutional conditions of confinement and that he was denied adequate medical care for those harms, thereby providing grounds to raise an IIED claim as to the medical care. But that is not the same issue that was originally raised in Count 21. The complaint alleges that he suffered certain physical harms (respiratory infections, aches, and pains) as a result of the unconstitutional conditions of confinement, but his dismissed medical claims alleged that certain individuals intentionally inflicted emotional distress upon Plaintiff by failing to address his eyesight, carpal tunnel syndrome, dislocated finger, high blood pressure, inadequate dental care, ADD, and

disability accommodations. The harms that Plaintiff alleged flowed from the unconstitutional confinement are not the same harms at issue from his medical claims, and thus the factual underpinnings are distinct. In order to assess the IIED claim from Count 21, the Court would have to inquire into the circumstances and provision of Plaintiff's medical care to determine if the alleged delays and denials amounted to "extreme and outrageous conduct." There is no factual overlap between that inquiry and the inquiry required by the claims present in this case. Therefore, the claims are not transactionally related, and the Court finds no error in its decision to dismiss Count 21 without prejudice.

The same logic applies to Count 23. Plaintiff alleges that he is disabled (although his exhibits repeatedly suggest that the prison does not consider him disabled) and that the prison has refused to accommodate him. This claim requires the Court to inquire into Plaintiff's alleged disability and the programs and services he alleges that he was denied access to as a result of his disability. Currently, none of the claims present in this lawsuit requires inquiry into those subjects. Count 23 is therefore not transactionally related to the other claims in this lawsuit, and the Court can find no error in its decision to dismiss that claim. Of course, as the prior dismissal was without prejudice, Plaintiff remains free to bring Counts 21 and 23 and any related claims in separate lawsuits, as the Court previously instructed him.

Because Plaintiff has not articulated any legal error or misapprehension, the Court will deny his Motion for reconsideration. (Doc. 15).

Plaintiff's Motions for appointment of counsel and preliminary injunctive relief (Docs. 2, 3, 6, and 7) are referred to United States Magistrate Judge Donald G. Wilkerson for prompt disposition.

**Disposition**

**IT IS HEREBY ORDERED** that **Counts 1** and **3** survive threshold review against Defendants Rauner, Baldwin, Butler, and Lashbrook. **Count 2** survives against Defendants Baldwin and Butler; Rauner and Lashbrook are **DISMISSED without prejudice** from **Count 2**. Defendant Illinois Department of Corrections is **DISMISSED with prejudice** from this lawsuit. **Counts 4-5, 8-11** are **DISMISSED without prejudice**. **Counts 6** and **7** are **DISMISSED with prejudice**.

Plaintiff's Motion for Status (Doc. 13) is **DENIED as moot**. Plaintiff's Motion to Reconsider the severance order of April 6, 2018 (Doc. 15) is **DENIED**.

**IT IS ORDERED** that the Clerk of Court shall prepare for Defendants Rauner, Baldwin, Butler, and Lashbrook: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting

service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Donald G. Wilkerson for further pre-trial proceedings.

Further, this entire matter is **REFERRED** to United States Magistrate Judge Donald G. Wilkerson for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1)

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will

cause a delay in the transmission of court documents and may result in dismissal of this action

for want of prosecution. *See* FED. R. CIV. P. 41(b).

      **DATED:  April 20, 2018**

                                      _____
                                        **NANCY J. ROSENSTENGEL**
                                        **United States District Judge**