IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **NEDRICK JEFFREY HARDY, SR.,** #B50437, | |
| **Plaintiff,** | |
| v. | Case No. 17-cv-01354-NJR |
| **JOHN BALDWIN, KIMBERLY BUTLER, JACQUELINE LASHBROOK, and JOHN DOE,** *correctional officer,* | |
| **Defendants.** | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This matter is before the Court on Defendants' motion for summary judgment (Doc. 125). Defendants Baldwin, Butler, and Lashbrook argue that Plaintiff Nedrick Hardy failed to exhaust his administrative remedies prior to filing suit. Hardy filed a response in opposition to the motion. (Doc. 134). On June 30, 2020, the Court held an evidentiary hearing.

### BACKGROUND

Hardy, and inmate of the Illinois Department of Corrections ("IDOC") who is currently housed at Menard Correctional Center ("Menard"), commenced this action by filing a Complaint pursuant to 42 U.S.C. § 1983 for the deprivation of his constitutional rights. (Doc. 1). On August 16, 2019, Hardy, through court recruited counsel, filed a Second Amended Complaint. (Doc. 122). The Second Amended Complaint alleges the following claims:   an Eighth Amendment claim for the inability to exercise due to inadequate living conditions and overcrowding, causing and contributing to various health issues (Count 1); a First Amendment claim for denying Hardy access to the courts by denying him timely access to legal mail (Count 2); an Eighth Amendment

claim for unconstitutional conditions of confinement resulting in the deprivation of shelter, water, food, and proper sanitation that meet the contemporary standards of human decency (Count 3); and an Eighth Amendment claim regarding the use of excessive force by the orange crush tactical team maintained through policies and customs implemented at Menard (Count 4).

Defendants argue that Hardy failed to exhaust his administrative remedies on all of the issues alleged in the Second Amended Complaint prior to commencement of this suit and reference nine grievances in support of their argument. (Doc. 126, p. 2). Defendants argue that the relevant grievances filed on June 19, 2014, September 4, 2015, November 8, 2015, March 10, 2016, October 28, 2016, November 9, 2016, and November 28, 2016, were not fully exhausted, and the grievances filed on June 30, 2014, and July 17, 2014, complain of issues outside the scope of this lawsuit. Defendants also claim that Hardy did not specifically name any of the defendants in his grievances. (*Id.* at p. 12).

In response, Hardy argues that his grievances were not properly handled before he could appeal to the Administrative Review Board. (Doc. 134, p. 5). He did not receive responses from his counselor, grievance officer, or the chief administrative officer for every grievance he filed, making the process unavailable to him. Hardy also claims that Defendants did not need to be named in the grievances because they are the very people to whom he grieved. Finally, Hardy argues that Defendants have failed to address and expressly argue for the dismissal of all of his claims, specifically inadequate and overcrowded living conditions (Count 3) and policies related to excessive force by the orange crush tactical team (Count 4), and thus, those arguments are foreclosed. (*Id.* at p. 11-13).

LEGAL STANDARDS

"Summary judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to

judgment as a matter of law." *Wragg v. Vill. of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. § 1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id*. The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that "[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-41(7th Cir. 2008). Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Court set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies

>that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* at 742. Because exhaustion is an affirmative defense, the burden of proof is on the defendants to demonstrate that "remedies were available and that [the plaintiff] failed to use them." *Ried v. Balota,* No. 19-1396, 2020 WL 3248128, at *3 (7th Cir. June 16, 2020). *See also Kaba v. Stepp,* 458 F. 3d 678, 686 (7th Cir. 2006).

### A. Illinois Exhaustion Requirements

As an inmate confined within the Illinois Department of Corrections, Hardy was required to follow the regulations contained in the Illinois Department of Corrections' Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. 20 ILL. ADMIN. CODE §504.800 *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. 20 ILL. ADMIN. CODE §504.810(a). The grievance form must:

>contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 ILL. ADMIN. CODE §504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the Grievance Officer. 20 ILL. ADMIN. CODE §504.820(a). The Grievance Officer considers the grievance and reports his or her findings and recommendations "in writing to the Chief Administrative Officer…" 20 ILL. ADMIN. CODE §504.830(e). The Chief Administrative Officer then advises the offender of the decision in writing. *Id.*

If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the Administrative Review Board ("ARB"). The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still feels that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director." 20 ILL. ADMIN. CODE §504.850(a). The inmate shall attach copies of the Grievance Officer's report and the Chief Administrative Officer's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 ILL. ADMIN. CODE §504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 ILL. ADMIN. CODE §504.850(e).

The grievance procedures do allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the Chief Administrative Officer ("CAO") who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. 20 ILL. ADMIN. CODE §504.840(a). If the CAO determines the grievance should be handled on an emergency basis, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him what action shall be taken. 20 ILL. ADMIN. CODE §504.840(b).

**ANALYSIS**

A. **Counts 1, 3, and 4**

The emergency grievance dated June 19, 2014, is relevant to the claims alleged in Counts 1, 3, and 4. (*See* Doc. 126-1, p. 28-35). This grievance is seven pages long and includes numerous

allegations regarding the living conditions at Menard including that (1) Menard is overcrowded; (2) two inmates are celled in small cells designed for one inmate; (3) the cells become extremely hot with no ventilation; (4) the cells contain mold; (5) the bunk beds do not have ladders or steps, and Hardy has injured himself climbing to and from the top bunk; (6) Hardy is served low quality food that causes various digestion issues; (7) Hardy is unable to exercise inside the cell because of the small size and is given limited out of cell time to exercise; and (8) there is a high number of staff assaults, specifically Hardy references the orange crush tactical team tearing up the cells of inmates of color and assaulting them. (*Id.*). The grievance is marked as an emergency and signed by Hardy but does not contain any notes from the warden in the "emergency review" section of the form. The grievance was received by ARB on July 30, 2014, and on September 30, 2014, the ARB determined that additional information for review was required and returned the grievance to Hardy. (*Id.* at p. 27).

At the recent hearing, Hardy testified that he did not submit the emergency grievance directly to the ARB, but submitted the grievance to the warden, as is the required procedure for emergency grievances. He did not, however, receive a response. Sometime later, as the director of IDOC was walking through the segregation unit, Hardy told the director about his grievance and how he was having problems receiving a reply. Hardy testified that the director told Hardy to send the grievance to him directly. Hardy then sent the grievance to the ARB, but the grievance was returned without review because the grievance was not submitted with a copy of a response from a grievance officer and the chief administrative officer. (Doc. 126-1, p. 27).

Defendants argued that Hardy failed to properly submit the June 19, 2014 emergency grievance, and other grievances, according to grievance procedures. Although there is not a written record or receipt demonstrating when an inmate receives a response to submitted grievances, Defendants' witnesses testified that responses to submitted grievances are returned

to the inmates. Additionally, Counselor Mathis stated he responds to submitted kites and grievances in writing. Defendants argued that Hardy has been incarcerated for twenty years and knows not only how to use the grievance process, but how to follow up with staff if he is not receiving a proper response. Defendants pointed to the ARB history log (Doc. 126-1, p. 36-41) showing a number of grievances regarding occurrences at other facilities that Hardy correctly submitted to the counselor, the grievance officer, and ultimately with the ARB. They also claimed that Hardy has a history of not following the proper procedures for submitting and appealing grievances. Instead of providing the necessary information for each grievance and appealing them individually, in certain cases, he attached untimely grievances as exhibits to a grievance on appeal before the ARB, in an effort to put information before the ARB without following the necessary procedures.

The Court finds that Defendants have not met their burden of establishing that the administrative remedy process was available to Hardy concerning the processing of the June 19, 2014 emergency grievance. As Defendants argued, and Hardy confirmed at the hearing, Hardy knows how to use the grievance process. According to Hardy's testimony, he sent the emergency grievance to the warden, and when he did not receive a response, he sent a letter, and then he sent the grievance to the ARB. The testimony and evidence submitted by Defendants does not demonstrate otherwise. In fact, the Court finds that the testimony offered by Defendants revealed several opportunities for error in the receipt and processing of inmate grievances. Witnesses for Defendants testified that prior to 2017 (1) one counselor was assigned to one hundred and fifty to two hundred inmates; (2) the grievances were not logged when they were submitted by inmates but placed in a lock box or cell bars for collection; (3) counselors informally went through the lock box and assigned the grievances to the correct counselor; (4) when a grievance was marked as an emergency, it was sent to the grievance office, where it was not assigned to a

grievance officer but placed in a stack of grievances; and (5) the emergency grievance was not recorded in a log until processed by a grievance officer and sent to the warden for determination. Although Defendants claim the grievance was not submitted through proper grievance procedures, given the lack of record keeping throughout the grievance process and the number of inmates assigned to a counselor, it is very possible that Hardy did submit the emergency grievance as he claims, and the grievance was someone how lost or overlooked.

Furthermore, David White, chairperson with the ARB, testified that the ARB is unable to review a grievance without a counselor's response and an answer from the grievance officer. In Hardy's situation, because he claims he did not receive an answer from the warden and the ARB would not review the grievance without an answer from Menard staff, the grievance process operated "as a simple dead end." *See Ross v. Blake,* 136 S. Ct. 1850, 1853 (2016).

Finally, the Court is not persuaded by Defendants' argument that Hardy failed to exhaust because the emergency grievance was not directed towards the named Defendants, who are the former director of IDOC, John Baldwin, and the former wardens of Menard, Kim Butler and Jacqueline Lashbrook.[1] Not only is an inmate not required to provide personal notice of suit to an individual defendant through his grievance, but in the June 19, 2014 emergency grievance Hardy states that "the warden, the director, and the governor have all turned a blind eye to the inhumane living conditions at Menard Correctional Center." (Doc. 126-1, p. 30). *See Maddox v. Love,* 655 F.3d 709, 722 (7th Cir. 2011). The grievance meets the PLRA's requirements of alerting "the prison to the nature of the wrong for which redress is sought[.]" *Westefer v. Snyder,* 422 F.3d 570, 580 (7th Cir. 2005) (citing *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)).

The Court draws "all reasonable inferences in the light most favorable to the non-moving

---

[1] Hardy also brings claims against a fourth defendant who is currently listed as John Doe correctional officer and has yet to be identified or file an answer to the Second Amended Complaint.

party[,]" *Kaba*, 458 F. 3d at 681, and finds that there is a genuine issue of material fact as to whether the administrative remedies were available to Hardy regarding the June 19, 2014 emergency grievance.[2] *See Dole v. Chandler*, 438 F. 3d 804, 809 (7th Cir. 2006); *Walker v. Sheahan*, 5226 F. 3d 973, 979 (7th Cir. 2008). Therefore, the Court denies the summary judgment motion as to Counts 1, 3, and 4.

B. **Count 2**

In Count 2, Hardy claims that Defendants denied him access to timely legal mail, understaffed the mailroom, and failed to train mailroom staff, which impeded or prevented him from prosecuting postconviction appeals and lawsuits. Regardless of whether or not the grievances presented by Defendants or Hardy were fully exhausted, Hardy's grievances did not put prison officials on notice about the issues regarding timely access to legal mail and problems with mailroom staff resulting in prejudice to his postconviction claims. *See Maddox*, 655 F. 3d at 722 (the function of a grievance is to provide "prison officials a fair opportunity to address [an inmate's] complaint.").

The grievance dated June 30, 2014 (Doc. 126-1, p. 24), which the parties agree was fully exhausted, grieves a situation where mailroom staff opened a piece of legal mail outside of Hardy's presence because the letter had not been clearly marked. The grievance dated July 17, 2014 (Doc. 126-1, p. 21), also fully exhausted, describes an event where a correctional officer ripped open an envelope in front of Hardy and took a self-addressed envelope. Additionally, the grievances and letters presented by Hardy regarding denial of access to the courts grieve issues regarding access to the law library and legal documents and confidentiality and privacy during legal calls. (*See* Doc. 122-1, pp. 30, 31, 37, 38, 44, 56-59, 70-77). All these grievances were insufficient

---

[2] Because the emergency grievance dated June 19, 2014, provides notice to prison officials of the issues alleged in Counts 1, 3, and 4, the Court will not address the arguments raised by the parties regarding the grievances dated September 4, 2015, November 8, 2015, March 10, 2016, October 28, 2016, November 9, 2016, and November 28, 2016.

to provide prison officials with notice that there was an issue of receiving and sending timely legal mail and improperly trained and understaff mailroom employees, and so, Count 2 will be dismissed for failure to exhaust administrative remedies.

## CONCLUSION

For the reasons stated above, summary judgment (Doc. 125) is **GRANTED** in part and **DENIED** in part. Count 2 is dismissed without prejudice. Counts 1, 3, and 4 remain pending.

**IT IS SO ORDERED.**

DATED:   July 7, 2020

*[signature: Nancy J. Rosenstengel]*

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**